NO. 8156

COURT OF APPEAL

PARISH OF ORLEANS.

———

S. P. TURNBULL

versus

AUTOMOBILE SERVICE COMPANY.

————

30122

Dinkelspiel; J.

Plaintiff sues the defendant company, alleging that
they were indebted to him, first in the sum of $435.00, the value
of one Ford Automobile, second in the sum of $107.00, being for
amount of repairs paid defendant and finally for the sum of $30.00
per month for the loss of the use of said machine from August
9th, 1917 until such time as he receives the said touring car.
Alleging further that defendants, who had for a consideration,
full charge of the machine in question, which xxxxxxx through
their neglect was stolen from their premises, praying judgment
for the amounts in question.

The defendant first filed an exception that the peti-
tion was too vague and indefinite and that it disclosed no cause
or right of action, which exception was referred to the merits
and answering, after denying indebtedness in any way to plain-
tiff, allege particularly that they refused to deliver said car,
admit the theft of the car but deny/they offered $107.00 in cash
liability and admit that
which plaintiff refused to accept, but this offer was made under
a misapprehension and they did not understand that their legal
rights, they allege further that they could not be called upon
to return the money paid for repairs, deny the value of the car
as alleged by plaintiff, $435.00, admit that plaintiff's car was
received by them for repairs May 27th, 1917, and allege that they
completed their contract June 6th, 1917, notifying plaintiff,
but that he failed to take the car away from their establishment
and that they exercised every reasonable care and precaution and
were not guilty of negligence and that said car was stolen from
the street in front of respondent's garage without their knowl-
edge and they did everything to recover the car in question, re-
porting to the Police Department and otherwise used every exer-
tion but without avail, hence pray for judgment.

We gather from the record the following substantial
facts:

On the 15th of June, 1917 in a letter by the defendant

204

on its letterhead wrote to plaintiff, and we quote same as follows

"We beg to advise that your Ford car under license No. 21793 is complete and ready for delivery; storage charges at twenty five (.25) per day will accrue on June 15th."

Plaintiff in this case substantially testifies that he owned a Ford touring car, which he bought sometime in May, 1917, and meeting with an accident he delivered the car in question for repairs, to Mr. Dickerson of defendant company; that he went to their establishment while still in bad shape, caused by the accident in question and that Mr. Dickerson informed him that they would put the car in proper shape and claiming that they had done so plaintiff went there to defendant's business place about the 9th of August and was presented with a bill for $107.00.

Q. What did Mr. Dickerson tell you at the time when you paid that bill of $107.00?

A. Well, I went in and looked around for my car and I didn't see it anywhere, Mr. Dickerson was engaged talking to a lady and I didn't dkxkxx disturb him, so I went and looked in the back part of the building without seeing my car, and finally said to Mr. Dickerson, "Well Dickerson lets cash up for that automobile; he said alright I am always willing to take money, presented the bill for $107.00 and I said to him I owe you another bill and he says, yes for the storage of that car, I was to pay twenty five cents a day for the storage and Mr. Dickerson continued, we won't settle that now because that bill will be brought down considerably, made less, so I simply paid him for the repairs.

Q. What did he tell you he was going to do with the car?

A. I said, Where is the car, he said its in the warehouse, I said I would like to get it and he replied, I am going to tell you, I will have the car out, it is a little duxkx dirty and dusty and I am going to clean the car up, I informed him then that I had to go to Kenner that evening and asked him if he would be have the car at my house at three o'clock, and his reply was, yes indeed, I will sure have it there, and I thought it was alright.

This witness continues in his testimony: the time approaching and the car not coming, I rang up on the telephone and spoke to Mr. Dickerson and he said "Oh! I have been trying to kx catch you ever since you left my office this monring, look here somrthing sometime ago there was a car stolen from my place and we have just found out it was your car, I replied thats queer, so after a further conversation, the witness called upon Mr. Dickerson who offered to return to him the amount he had paid for repairs $107.00, Dickerson told him that the car was kx stolen about the third of July and this conversation was on August 9th and he also informed me that he had notified the police and had endeavored to trace the car without success; he then goes on to testify that he had paid $430.00 for the car in question but in a collission with another auto the car had been badly damaged and he goes on to describe the damages which were repaired by the defendant company.

In his testimony on rebuttal this same witness testified that in the accident referred to he had three ribs broken, collar bone was bruised, he had to have his teeth /extracted all of them, and he was in a bad shape and that was the reason he was not able to go for his car prior to the time testified to; he was compelled to hire another car to take his wife out riding, who was also injured in the accident; he testifies to receiving the letter, charging twenty five cents per day for storage and to this xxx extent presents for consideration his case.

One of the defendants, Mr. Dickerson in his testimony says:

Q. Mr. Dickerson, you are being sued here for the value of a Ford car which it is alleged was stolen from your place of business, we admit the theft of the car. /Where was the car when it was stolen?

A. It was within-as near as I can tell, about twenty five feet pf the front door of our garage, parked against the curbstone on Howard Avenue, that was our place of business.

206

The car was stolen during the daytime on the 12th, 5 o'clock in the afternoon, broad day light.

Q. Why was that car out in the street?

A. Because we simply didn't have room to keep it inside any more, our work was hanging, we had lots of work to do and we needed floor splace to actually work at on other jobs.

Witness testifies that his firm did a general service business but nothing else and further testifies that the car was brought into the garage every night and never left out, that the car was in the possession of defendant about two months; that he had notified plaintiff to take this car away, whikxkxf he further testifies that there were eighteen or twenty cars out there in front until night time and they were all parked against the curb-stone, he admits that he accepted the price of the repairs fxx knowing the car had been stolen and that he expected through the police to get the car back, hence made the statement that he woulk return it to plaintiff, that he endeavored to do that but without avail, that he had notified the police department about the 4th of July and that was the time he knew the car in question had been missing.

Question by the Court as to whether or not they had received any reply to the letter sent by his firm to plaintiff, he said no.

In reference to the value of the car in question, Oscar McCoy, an automobile salesman for four years and who was familiar with the value of /cars after describing it, puts the value at $225.00.

E. J. Kehlor was employed as salesman and stock man by the Universal Motor Company and had been in the business for six or seven years, is familiar with the value and price of cars and he places the value of this car at $250.00 to $270.00.

Eugene Stanley, who was Assistant District Attorney at the time in question, it was admitted, would have testified that Mr. Dickerson called on him and stated that he was willing to reimburse plaintiff in the value of the car.

The Civil Code under the heading of the obligations of the depositary.

Art. 2937. "The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property."

Art. 2938. "The provision in the preceding article is to be rigorously enforced."

Section 4 of Art. 2938 reads: "If it has been expressly agreed that the depositary should be answerable for all neglects."

The case relied on mainly possibly by the defendant is that of Levy vs. Pike, Brothers & Co. 25 Ann. p. 630, and it was there held:

"Where the deposit was a gratuitous one, and where the abstraction of the thing deposited seems to have been one of those bold and adroit acts which are carried out successfully in definance of ordinary prudence and diligence, and the possibility of which is seen only after its accomplishment, the depositary is not liable, as he would be if the loss arose from gross or inexcusable negligence on his part."

And this same case on rehearing the Court finds that "this was a gratuitous deposit and decided under the circumstances the defendant not liable and not to be held to that rigid accountability he would have been had the contract been one of hiring, or had the deposit been made at the request of the depositary, or solely for his advantage, or had it been expressly agreed that he should be answerable for all neglects. C. C. 2938. None of these conditions appear to have entered into the agreement of the parties in this case."

Taking into consideration all the facts of this case we hold the defendant liable mainly for the reason that they admit that from ten to at times possibly twenty cars are left on the public streets without any watchman or care of any kind or character, that no one in defendant's employ paid the slightest attention to this automobile and it was left with others

208

on the public street without any one in charge and it was placed with defendant by plaintiff for storage, the rate fixed being twenty five cents per day and had been taken away from his open place sometime in the month of July 1917 and had never been returned to plaintiff, in fact had never been found, and, as far as this record goes, is still missing, and not being a gratuitous deposit we are of the opinion that defendant is liable and responsible for the value of the car

But we do not consider that they are liable for the value of a new car and they can only be held for the value of a second hand car, which value, testified to by witnesses, would be for a second hand car, from $225.00 to possibly $275.00.

We are therefore of the opinion that the amount allowed by the District Court in this case is entirely too high and therefore the judgment in this case must be reduced.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the lower Court be amended, and that there now be judgment in favor of S. P. Turnbull and against the Automobile Service Company, W. H. Post and V. A. Dickerson, in solido, for the full sum of $225.00, plaintiff to pay the costs of this Court and the defendants to pay the costs of the District Court, and as thus amended, judgment be affirmed.

—Judgment amended and affirmed.

Claiborne, J. not having heard the argument takes no part.